## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brenda Salcedo, Dennis M. Novack,
and Janet C. Novack, *all individually and
on behalf of all others similarly situated*,

Plaintiffs,

v.

Todd R. Uecker, *Registrar of Titles,
in and for the County of Ramsey
and State of Minnesota, in his individual
and official capacity*; Wayne D.
Anderson, *Ramsey County Examiner of
Titles, in his individual and official
capacity*; Nathan Bissonette, *Deputy
Ramsey County Examiner of Titles, in his
individual and official capacity*;
John Doe, *in his individual and official*
capacity; AlexSoft, LLC, *a Minnesota
limited liability company, doing business
as West Central Indexing, all of the above
on behalf of themselves and all others
similarly situated within and without
Ramsey County*; Ramsey County, *a
political subdivision of the state of
Minnesota, for itself and on behalf of all
other Minnesota counties*; Jane Doe,
*Deputy Registrar of Titles or Clerk of the
Registrar of Titles, in and for the County
of Ramsey and State of Minnesota, in her
individual and official capacity*; Susan R.
Roth, *former Registrar of Titles, in and for
the County of Ramsey and State of
Minnesota, in her individual and official
capacity*; John Doe, Inc., *for itself and on
behalf of all others similarly situated;* and
Jim Schowalter, *Minnesota Commissioner
of Management and Budget, in his official
capacity*,

Defendants.

Civil No. 22-2045 (DWF/ECW)

**MEMORANDUM
OPINION AND ORDER**

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendant Commissioner Jim Schowalter ("Schowalter") (Doc. No. 34), a Motion to Dismiss brought by Defendant AlexSoft, LLC ("AlexSoft") (Doc. No. 39), an Amended Motion to Certify Class brought by Plaintiffs Brenda Salcedo ("Salcedo"), Dennis M. Novack ("D. Novack"), and Janet C. Novack ("J. Novack") (collectively, "Plaintiffs") (Doc. No. 44), an Amended Motion for Preliminary Injunction brought by Plaintiffs (Doc. No. 49), and a Motion to Alter/Amend/Supplement Pleadings brought by Plaintiffs (Doc. No. 71). For the reasons set forth below, the Court grants Schowalter's and AlexSoft's motions to dismiss and denies Plaintiffs' motion for preliminary injunction, motion to certify class, and motion to amend.

## BACKGROUND

In this action, Plaintiffs allege that Ramsey County registrars of title have improperly been issuing certificates of title that include references to prior certificates of title that contain illegal racial covenants. (*See, e.g.*, Doc. No. 1 ("Compl.").)[1] In their 119-page "Class Action Complaint," Plaintiffs allege sixteen counts under both federal and state law seeking damages, attorney fees, and injunctive relief. All of Plaintiffs' claims relate to allegations that the named county registrars have issued certificates of

---

[1]      Plaintiffs filed this case in Minnesota State Court on July 22, 2022, and Defendants removed the action to this Court on August 19, 2022. (Doc. No. 1, 1-1.)

title that refer to other certificates of title that contain racial covenants.  (*Id*. ¶¶ 579-658.)[2]
Plaintiffs also seek to certify both a plaintiff and defendant class.

Defendant Wayne D. Anderson is the current Examiner of Titles for Ramsey
County.  Defendant Nathan Bissonette is the Deputy Examiner of Titles for Ramsey
County.  Defendants Anderson, Bissonnette, Todd J. Uecker, Susan R. Roth, Ramsey
County, and the Doe Defendants allegedly associated with Ramsey County are referred to
together as the "Ramsey County Defendants."  Defendant Schowalter oversees
Minnesota Management and Budget, an agency of the State of Minnesota.
(Compl. ¶ 190.)

Minnesota has two systems for maintaining land records, the abstract system and
the Torrens system.  Until 1901, all real property in Minnesota was abstract property.  *In
re Collier*, 726 N.W.2d 799, 803 (Minn. 2007).  In the abstract system, deed, mortgages,
and other interests in land are recorded with the county recorder in the county where the
property is located, and the documents become public records.  *Id*. at 803-04.  The
documents are summarized in a single document called the abstract title.  *Id*. at 804.
Because a property title may be affected by factors not reflected in public documents, a

---

[2]     The parties agree that racially restrictive covenants have been illegal and
unenforceable in Minnesota for nearly 75 years and recognize that Minnesota landowners
may want to amend their title documents to disclaim any such covenant.  As described in
more detail below, Minnesota law provides a mechanism for doing so.  *See, e.g.*, Minn.
Stat. § 508.71, subd. 3.  There is no allegation that a defendant ever attempted or
threatened to enforce, or refused a request to cancel, a racially restrictive covenant.
**Indeed**, there is no disagreement among the parties—or the Court—that racially
restrictive covenants are a shameful relic of the State's past.

prospective purchaser must carefully review a property's history to complete a title search for interests in a property. *Id*.

In 1901, Minnesota adopted the Torrens system—an alternative to the traditional system. *Id*. (citing Act of Apr. 11, 1901, ch. 237, 1901 Minn. Laws 348). The system is codified under the Torrens Act at Minn. Stat. ch. 508. *Id*. The primary benefit of the Torrens system is that is simplifies the search for interests affecting a particular property and, with limited exceptions, a title search can be done by examining a single document. *Id*. at 804-05.

In the Torrens system, a court adjudicates ownership of and interests affecting a property, after which the registrar of titles creates a certificate of title. *Id*. at 804 (citing Minn. Stat. §§ 508.34, 508.35). To register a property under this system, an owner submits an application to the examiner of titles and the local district court for review and approval. Minn. Stat. §§ 508.03, 508.11, 508.22. When the application is approved, a county's Registrar of Titles then issues a certificate of title in the owner's name, the address of the property, a description of the land, and listing any encumbrances as determined in the court proceeding. Minn. Stat. § 508.35.

Once approved, the certificate of title may not be altered, amended, or erased, except in limited circumstances. Minn. Stat. § 508.71, subd. 1. If the property changes hands, the registrar of titles cancels the existing certificate of title and issues a new title in the name of the new owner. Minn. Stat. § 508.52. The new certificate must continue to show "encumbrances, claims, or interests adverse to the title of the registered owner . . ., except so far as they may be simultaneously released or discharged." *Id*.

The Torrens system does have a way to cancel racial encumbrances.  "At the request of a registered owner or other person in interest, the examiner of titles by a written directive may order . . . the amendment or cancellation of a memorial relating to racial restrictions, rights which are barred by a statute or rights which have expired by the terms of the instrument creating [them]."  Minn. Stat. § 508.71, subd. 3.  The examiner then issues a directive to the registrar of titles, directing the registrar to add a memorial to the current certificate of title issued for the property indicating that the restriction at issue no longer encumbers the property and to omit the restriction from future certificates. (Doc. No. 68 ("Anderson Decl.") ¶ 6.)

Typically, a property owner must pay a fee to obtain a directive from the examiner of titles to discharge a racial covenant.  Minn. Stat. § 508.82, subd. 1(4).  The collection of fees is left to individual counties.  (Anderson Decl. ¶¶ 8-12.)  Ramsey County Defendants submit that they have taken at least two steps to facilitate the discharge of unenforceable racial covenants—making the process free and adopting a broad statutory interpretation of the phrase "[a]t the request of a registered owner."  *See, e.g.*, Minn. Stat. § 508.71, subd. 3.  In Ramsey County, the examiner looks for racial covenants and issues directives to cancel those covenants whenever the examiner is asked to provide a directive even if the requested directive is not related to a racial covenant.  (Anderson Decl. ¶ 12.)[3]

---

[3]    In some counties, the examiner of titles only issues a directive cancelling a racial covenant upon the specific request of a property owner.  (Anderson Decl. ¶ 12.)

Once a Torrens title is issued, if six months have passed and there is a good faith purchaser for value who has relied on the certificate of title, that title is generally immune from attack (i.e., the "Torrens bar"). Minn. Stat. §§ 508.25 and 508.28. Under the Torrens bar, even legitimate claims to an interest in land can be destroyed by a Torrens title if the title is adverse to the claim and the purchaser relied on the certificate in good faith. *Id*. The Torrens bar can apply even if a Torrens title certificate was issued in error and if the registrar of title's negligence contributed to that error. *Id*. Recognizing that the Torrens bar could create unfair results, the Torrens Act created a right to compensation for persons who have lost an interest in property that they are unable to recover due to the Torrens bar. Minn. Stat. §§ 508.76-.77. Defendant Schowalter oversees the statutory assurance fund (the "Torrens fund") for transactions involving Torrens-registered land.

Defendant AlexSoft is a private company that designed and distributed a computer and web-based software product called "RecordEASE." (Compl. ¶¶ 269, 270.) RecordEASE software is a computer-searchable land record system whereby the software maintains all necessary data to produce a certificate of title. (*Id*. ¶¶ 269-71.) RecordEASE is used by Minnesota agencies and counties as a platform to view and print the counties' title records.

On July 25, 2022, Plaintiffs filed this action in Ramsey County District Court against the Ramsey County Defendants, Schowalter, AlexSoft, and John Does, Inc. Salcedo alleges that she rented a room and common space from June 2021 through May 2022 in a house that had a racially restrictive covenant on the original warranty deed from the property that dates back to the 1920s. (Compl. ¶¶ 374-80, Exs. 41, 42.) The

Novacks are a married couple who have owned a house in Ramsey County for 32 years, which also has a racially restrictive covenant on the original warranty deed that dates back to the 1920s. (*Id*. ¶¶ 397-403; Exs. 2, 3.) The covenants do not appear on the face of the certificates of title; the certificate states that the title is "[s]ubject to Restrictions contained in" the warranty deed. (*Id*., Exs. 2, 41.)

Plaintiffs allege that they have experienced emotional distress related to knowledge of the restrictive covenants. (*Id*. ¶¶ 390, 404-10.) In addition, the Novacks allege economic harm caused by the attempt to remove the racial covenant from their certificate of title. (*Id*. ¶ 472.) Plaintiffs bring this 16-count action on behalf of themselves and a purported class of every individual in the State of Minnesota that has a racially restrictive covenant on their certificate of title. (*Id*. ¶ 501.) Plaintiffs also seek to join as a defendant class every County in Minnesota, their registrars and examiners of titles, and every public or private entity with which the Counties may contract to provide title services. (*Id*. ¶ 524.)

Defendants Schowalter and AlexSoft each move separately to dismiss, and Plaintiffs move for preliminary injunction, to certify class, and to amend. The Court considers the motions below.

## DISCUSSION

### I.  Motions to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.

*Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 177, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

A.      **Claims Against Commissioner Schowalter**

Plaintiffs name Schowalter as a defendant in his official capacity as the administrator of the Torrens fund. (Compl. ¶¶ 184-90.) Plaintiffs argue that Schowalter is properly included as a defendant in this case because of the ambiguities in the

8

Minnesota statutes and case law concerning the Torrens fund.  Plaintiffs further submit that should Schowalter be dismissed, they be granted leave to implead him back into the case upon a proper showing.

Plaintiffs do not allege any specific conduct by Schowalter related to the issuance of the relevant certificates or racial covenants.  Instead, Plaintiffs seek to recover against Schowalter based on the actions of the registrars.  (*See generally id*. ¶¶ 184-90.) Plaintiffs' theory of recovery against Schowalter is that the Torrens Act makes the Torrens fund, which Schowalter administers, liable for the alleged negligence of Torrens registrars.

Schowalter argues that Plaintiffs' claim against him fails for several reasons:  first, because Plaintiffs failed to properly plead a viable claim against the Torrens assurance fund; second, because Plaintiffs failed to plead a claim directly against Schowalter; and third, because of various other defects requiring dismissal.  In their opposition, Plaintiffs do not contest the latter two arguments for dismissal, and instead focus on whether the Torrens fund is available to them and whether Schowalter is, therefore, vicariously liable for the actions of the registrars.

The Torrens Act provides:

> Any person who . . . sustains any loss or damage by reason of any
> omission, mistake or misfeasance of the registrar . . . [and is damaged] . . .
> and who, by the provisions of this law, is precluded from bringing an action
> for the recovery of such land . . . may institute an action in the district court
> to recover compensation out of the general fund for such loss or damage.

Minn. Stat. § 508.76, subd. 1.  This provision allows recovery when a party is precluded from bringing an action by the Torrens registration laws.  *Zahradka v. State*, 515 N.W.2d

611, 613-14 (Minn. Ct. App. 1994) ("We hold that Minn. Stat. § 508.76 *only* allows recovery when a party is precluded from bringing an action by the Torrens registration laws) (emphasis added); *see also Hauge v. Schowalter*, Civ. No. A13-2073, 2014 WL 4056026, at *2 (Minn. Ct. App. Aug. 18, 2014) (same).[4]

Here, the Torrens bar does not preclude Plaintiffs' discrimination or negligence claims. Indeed, Plaintiffs have not alleged that the Torrens bar precludes their claims against the registrars. Because the Torrens bar does not apply here, Plaintiffs do not have a claim against the Torrens fund. Accordingly, Commissioner Schowalter's motion to dismiss him as a defendant is granted. The Court will dismiss Plaintiffs' claims against Schowalter with prejudice.

**B.     Claims Against AlexSoft**

Plaintiffs also assert claims against AlexSoft, arguing that even though it is a private entity, it faces potential liability under federal and state civil rights statutes because it engages in quasi-governmental activities. Plaintiffs argue that Ramsey County willingly ceded the work of the office of the registrar of titles to AlexSoft and that AlexSoft is acting "under the color of law "by creating certificates of title, numbering certificates of title, indexing them in the register of titles, organizing and indexing

---

[4]     Plaintiffs argue that there are ambiguities in the Minnesota statutes and case law concerning the Torrens fund, and in particular, that the Minnesota Supreme Court's decision in *Imperial Developers, Inc. v. Calhoun Dev., LLC*, 790 N.W.2d 146 (Minn. 2010) supports a broader interpretation of Minn. Stat. § 508.76. The Court disagrees. *Imperial Developers*, which concerns the issue of a lien priority, turned on the interpretation of the words "of record" in Minn. Stat. § 508.76 and did not address the issue of the availability of the fund to persons damaged by registrar negligence.

property records, and act[ing] in concert with county registrars in denying plaintiffs' their federal and state civil rights." (Doc. No. 69 at 6.)

AlexSoft moves to dismiss Plaintiffs' claims against it, arguing that the claims are based on the erroneous understanding of what AlexSoft does (and is allowed to do) with respect to certificates of title. Specifically, AlexSoft submits that it merely provides a method for compiling, accessing, storing, and preserving records and that it has no role in the creation or distribution other than as a platform—namely, that it does not *create* the certificates. In addition, AlexSoft argues that none of Plaintiffs' sixteen claims apply to AlexSoft and that Plaintiffs lack standing based on a lack of traceability to Plaintiffs' alleged injuries and AlexSoft.

The Court finds that Plaintiffs have failed to state a claim against AlexSoft. First, in their opposition Plaintiffs argue that AlexSoft acts under the color of state law because it fulfills the public function of the registrar of titles office by *creating* certificates of title, as well as numbering, indexing and organizing property records. In support, Plaintiffs state:

> It takes work to create a certificate of title. They don't just magically materialize out of thin air. *AlexSoft does the work*. Registrars and examiners *probably* (although discovery will shed more light on this) make the decisions about which documents are added and removed from certificates of title. *AlexSoft* does the grunt work of actually writing, making, creating, organizing, indexing, and archiving certificates of title and other property records that was previously done by deputy registrars of titles and clerk of the registrars.

(Doc. No. 69 at 6-7.) What Plaintiffs fail to do, however, is to cite to specific allegations in the Complaint that would support these broad statements. Instead, Plaintiffs point to a

selective portion of an exhibit to the Complaint that takes language from AlexSoft's

website.  The full content of that exhibit reads:

> The RecordEASE Automated Torrens Systems maintains all necessary data
> to produce a Certificate of Title.  No need to access various pieces of data
> from different locations in order to retrieve indexed documents to create a
> Certificate of Title.  Both Abstract and Torrens are accessible from one
> location within the RecordEase Indexing module.  This ability gives you
> the power you need to make the necessary decisions regarding recordability
> of documents in the Torrens land area of your office at the same time the
> abstract area of your office is recording documents.  The Automated
> Torrens System not only manages all the data necessary to maintain and
> produce Certificates of Title, but it is integrated to the point of giving the
> user warnings that an abstract document is being indexed to Torrens
> property regardless of it being platted or unplatted land.  RecordEASE
> Automated Torrens System has the ability to interface with other
> applications currently used.
>   - Ability to track the status of certificate process
>   - Automatically create Certificate of Title when a document is
>     Registered
>   - Ability to create memorial without the duplicate entry of data
>   - Format, Create and Render various types of Certificates of
>     Title as required by Statute now or in the future
>   - Ability to Render Standard memorial tract by instrument type
>   - Maintain memorials form Old Certificate to the New
>     Certificate

(Compl., Ex. 33.)  Plaintiffs' edited recitation of the content of this exhibit, importantly,

omits, among other things, the statement:  "This ability gives you the power you need to

make the necessary decisions regarding recordability of documents in the Torrens land

area of your office."  (*Id*.)

Other than the reference to the above exhibit, Plaintiffs rely on conclusory

allegations, including for example, that the registrar does not create certificates of title

but instead relies solely on AlexSoft to create all such certificates.  Plaintiffs, however,

cite to no allegation that would support an inference that AlexSoft has any control over the content of the government records or that AlexSoft can change or edit such content. Plaintiffs have not supported any allegation that AlexSoft does anything beyond providing a means by which counties can view and print records. Without citation to some factual support for their allegations, Plaintiffs' conclusory allegations do not meet the basic pleading requirement to raise a right to relief above a speculative level.[5] As such, AlexSoft's motion to dismiss is properly granted. The Court will dismiss Plaintiffs' claims against AlexSoft with prejudice.[6]

## II.   Motion for Preliminary Injunction

Plaintiffs move for a preliminary injunction seeking to "forever stop the making of racist certificates of title in Minnesota and the inclusion of time-barred restrictions in certificates of title in Minnesota, and to ensure that no person pays a fee to remove racist provisions and time-barred restrictions from certificates of title." (Doc. No. 51 at 3.) In support, Plaintiffs argue that there is a threat of irreparable harm to the proposed class but focus on the alleged monetary damages associated with recording fees to record examiners' directives to remove racist provisions. Plaintiffs also argue that they are

---

[5]   Indeed, Plaintiffs' suggestion that AlexSoft does all the work of creating certificates of title is directly contradicted by other allegations in the Complaint asserting that the registrars and governmental actors create the certificates of title at issue in this lawsuit. (*See, e.g.*, Compl. ¶¶ 20, 52, 272, 275, 286, 449.)

[6]   Because Plaintiffs' Complaint as it is asserted against AlexSoft fails to satisfy Rule 12's pleading requirements, the Court need not reach AlexSoft's additional arguments in support of its motion to dismiss.

likely to succeed on the merits and that "Defendants' myriad violations of the law are shown and evidenced throughout the 327 page complaint." (*Id*. at 8.)

Defendants oppose Plaintiffs' motion for preliminary injunction. Defendants argue that the motion should fail because Plaintiffs are not seeking the status quo, have failed to establish irreparable harm, cannot prove a likelihood of success on the merits, and the balance of the harms and public interest do not support Plaintiffs' requested relief. Defendants stress that Ramsey County, through official action, has acknowledged the fact that racially restrictive covenants are a shameful part of Minnesota history and that their very presence in property records is offensive even accepting that they are categorically unenforceable.[7] Ramsey County further submits that it has taken affirmative steps to make it easier for residents to discharge these covenants and to do so free of charge. (Anderson Decl. ¶¶ 8-9.) Defendants argue that Plaintiffs' requested relief would require county officials to comb through records to remove covenants, a task that would take years and exact an enormous cost on taxpayers. Defendants maintain that Plaintiffs' requested relief is not commensurate to the scope of the problem when, as now, there is a free and efficient way for landowners to take steps to discharge the covenants.

---

[7]     The Court notes that considerable efforts are being made in Minnesota both to acknowledge the legacy of and discharge discriminatory covenants. One example is the Just Deeds Project, an initiative that offers free legal services to help homeowners discover and discharge racial covenants from their property titles. The Just Deeds website indicates that there are currently twenty-one participating cities in Minnesota. (*See* www.justdeeds.org.)

The Court considers four factors in determining whether to grant a preliminary injunction: (1) the threat of irreparable harm to the moving party; (2) the balance between this harm and the injury that granting the injunction would inflict on the non-moving party; (3) the moving party's likelihood of success on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* A preliminary injunction is an "extraordinary remedy," and the moving party bears the burden of establishing the need for a preliminary injunction. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

Here, Plaintiffs' motion for a preliminary injunction fails for several reasons. First, Plaintiffs have not demonstrated a threat of irreparable harm. Plaintiffs assert economic harm caused by the stated statutory fees to amend certificates of title. However, Ramsey County has waived all such statutory fees incurred to remove racial covenants, making any such alleged harm unlikely. And even if the assessment of fees was certain, there is an adequate remedy at law to address those fees. To the extent that Plaintiffs allege damages for emotional distress, Plaintiffs have not adequately demonstrated that any such damages are imminent or irreparable. In Minnesota, racial covenants are illegal and unenforceable. Plaintiffs do not allege that they have been deprived of property rights associated with any such covenant and do not claim that Defendants are attempting to enforce such covenants. Even accepting that Plaintiffs

could experience some level of distress in discovering the existence of a racial covenant, damages for that distress could be adequately addressed through compensatory damages. Because Plaintiffs' alleged harm could be compensated with monetary damages, and in light of the undisputed fact that Ramsey County has a process by which illegal and unenforceable covenants can be (and are being) removed, Plaintiffs have not demonstrated irreparable harm. The failure to make such a showing is an independently sufficient ground upon which to deny a preliminary injunction. *See Gelco*, 811 F.2d at 420.

Second, Plaintiffs have not met their burden to demonstrate a likelihood of success on the merits. As discussed above, Plaintiffs have filed a 16-claim Complaint, yet Plaintiffs do not put forth any legal argument or cite to any legal support that would demonstrate a likelihood of success on any of them. In fact, in their memorandum supporting the motion for preliminary injunction, Plaintiffs provide only four sentences in support and merely refer back to the "327 page complaint" as evidence of violations of the law:

> Defendants' myriad violations of the law are shown and evidenced throughout the 327 page complaint. Plaintiffs will *probably* succeed on the merits. Discovery is necessary to evidence the full scope of the wanton and reprehensible acts of defendants. At this state of the litigation, plaintiffs have plainly shown that they will most likely succeed on the merits.

(Doc. No. 51 at 8-9 (emphasis in original).) This conclusory argument falls short of Plaintiffs' legal burden to demonstrate a likelihood of success on the merits.

Because Plaintiffs have failed to meet their burden to demonstrate irreparable harm or likelihood of success on the merits, the Court denies their motion for a preliminary injunction.

## III.   Motion for Provisional Class Certification

Plaintiffs move for provisional class certification "for the purposes of pursuing preliminary injunctive relief." (Doc. No. 46 at 5.) Because the Court has determined that Plaintiffs are not entitled to preliminary injunctive relief, Plaintiffs' motion for class certification is moot.

## IV.   Motion to Amend

Plaintiffs move to amend the Complaint to add two additional plaintiffs, eight additional counts, and a claim for punitive damages. The proposed additional counts appear to mirror Plaintiffs' original claims but in relation to the two proposed additional plaintiffs, namely that Defendants violate the law when they issue certificates of title that contain documents containing racial covenants. (Doc. No. 75 ¶¶ 666-79.)

Rule 15 requires the Court to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Even though this is a liberal standard, there is not an absolute right to amend for any claim at any time. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). A motion to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (internal quotation and citation omitted).

The Court finds that justice does not require that Plaintiffs be given leave to amend here. Plaintiffs seek to add additional parties and counts, but have not explained the delay or why the parties and counts were not included in the original Complaint. The proposed allegations do not appear to be aimed at curing any deficiencies raised in the pending motions to dismiss or to have arisen from any changed circumstances. Moreover, the proposed allegations relate to the same basic facts alleged in the original Complaint.

Defendants have made various arguments regarding the futility of the proposed additional claims. The Court need not reach the futility arguments in light of the Court's conclusions above. Even so, the Court briefly addresses Plaintiffs' proposed claim for punitive damages. Such damages are allowed in civil actions, "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." *See Olson v. Snap Prods., Inc.*, 29 F. Supp. 2d 1027, 1035, n.2 (D. Minn. 1998) (citing Minn. Stat. § 549.20); *see also, Quigley v. Winter*, 598 F.3d 938, 952-53 (8th Cir. 2010) ("Punitive damages are appropriate in a federal civil rights action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.") (internal quotation and citation omitted). Here, Plaintiffs have not alleged facts that would plausibly show that any defendant's conduct rises to this level. The Court therefore denies Plaintiffs' motion to amend.

## CONCLUSION

For the reasons discussed above, the Court dismisses Plaintiffs' claims against

both Schowalter and AlexSoft.  All claims asserted against these two Defendants are

dismissed with prejudice.  Remaining in this action are Plaintiffs' claims against Ramsey

County Defendants.  However, with respect to those claims, the Court denies Plaintiffs'

motion for preliminary injunction for failure to demonstrate irreparable harm or

likelihood of success on the merits.  In addition, the Court denies Plaintiffs' motions to

certify class and to amend the pleadings.  In light of the current efforts throughout the

state to discharge racial covenants, Plaintiffs' claim for any damages in this case appears

weak, and the Court believes it is in the parties' best interests to attempt to resolve this

matter.  In addition, given the Court's decision, the Court suggests that the parties reach

out to the Minnesota County Attorneys Association and the City Attorneys in the State of

Minnesota.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.    Defendant Jim Schowalter's Motion to Dismiss (Doc. No. [34]) is

**GRANTED**.

2.    Defendant AlexSoft's Motion to Dismiss (Doc. No. [39]) is **GRANTED**.

3.    Plaintiffs' claims against Schowalter and AlexSoft (Doc. No. [1-1]) are

**DISMISSED WITH PREJUDICE**.

4.    Plaintiffs' Motion for Preliminary Injunction (Doc. No. [49]) is **DENIED**.

5.      Plaintiffs' Motion to Certify Class (Doc. No. [44]) is **DENIED AS MOOT**.

6.      Plaintiffs' Motion to Amend (Doc. No. [71]) is **DENIED**.


Dated: April 24, 2023                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge